IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 11, 2004 Session

## STATE OF TENNESSEE v. ROGER DALE BRYAN

**Direct Appeal from the Circuit Court for Bedford County**
**No. 15202     Lee Russell, Judge**

———————————

**No. M2003-01366-CCA-R3-CD - Filed July 7, 2004**

———————————

The Appellant, Roger Dale Bryan, was convicted of driving under the influence (DUI), fourth offense, and driving on a revoked license, third offense, by a Bedford County jury. The verdict returned by the jury found Bryan guilty of both driving and being in physical control while under the influence. On appeal, Bryan challenges the legal sufficiency of the proof supporting each basis for conviction. After review of the record, we find the evidence sufficient for both and affirm the judgments of conviction, which were merged into a single conviction for DUI.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which THOMAS T. WOODALL, and JOHN EVERETT WILLIAMS, J.J., joined.

Merrilyn Feirman, Nashville, Tennessee; Michael Collins & Curtis Gann, Assistant Public Defenders, Shelbyville, Tennessee.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Elizabeth T. Ryan, Senior Counsel; W. Michael McCown, District Attorney General; and Michael Randles, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

On September 7, 2002, at approximately 7:00 p.m., Officer Tim Fox of the Shelbyville Police Department received a call that a vehicle was blocking the intersection of Cedar Bluff and Cedar River Roads. Upon arrival, the officer observed the Appellant "bent over under the hood" of a 1970 Ford pickup truck, which was blocking the entire intersection. After approaching the Appellant, the officer's questions were initially ignored; however,

As I got his attention, I asked him whose truck it was. He stated in profanity about a female.[1] And he stated that she had walked away from the scene. And I asked him who the female was; he said he did not know. I asked him how much he had to drink and he said he hadn't been drinking. And obviously, he was staggering about and unsteady on his feet, had a strong smell of alcohol on his breath. I asked him once again, I asked him who the truck belonged to. And he stated the female.

The Appellant performed "very poorly" on three field sobriety tests and, based upon these tests and the Appellant's demeanor, he was arrested for DUI. After his arrest, the Appellant became very hostile and abusive. A second officer at the scene noted that the Appellant "reeked" of alcohol and that his speech was very slurred. At the jail, the Appellant refused to take a breathalyzer test. An inspection of the truck revealed that the keys were in the ignition and a "nearly empty" bottle of Seagrams 7 Crown whiskey was in the driver's seat. Because the vehicle was causing a traffic hazard, it was removed from the scene by a tow truck. The officer related that, during the approximate fifty-minute period that he was at the scene, no one ever approached him claiming any "connection" with the truck, nor was a woman ever seen walking in the area.

On January 23, 2003, a Bedford County grand jury returned a three-count indictment against the Appellant charging him with: (1) violation of the Motor Vehicle Habitual Offenders Act; (2) DUI, seventh offense; and (3) driving on a revoked license, third offense. The case proceeded to trial on March 19, 2003, and the Appellant was convicted of DUI, fourth offense, and driving on a revoked license, third offense. He was subsequently sentenced to concurrent sentences of six years for the DUI conviction and eleven months and twenty-nine days for the driving on a revoked license conviction. The Appellant's motion for new trial was denied, with this appeal following.

**Analysis**

In considering this issue, we apply the rule that, where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

---

[1]The officer later explained that the Appellant actually referred to the female as "some bitch."

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Although a conviction may be based entirely upon circumstantial evidence, *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1974), in such cases, the facts must be "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991) (citing *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985)). However, as in the case of direct evidence, the weight to be given circumstantial evidence and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958) (citations omitted).

## 1. Driving Under the Influence

The Appellant was convicted under Tennessee Code Annotated section 55-10-401(a)(1) (2003), which provides that it is unlawful for any person to drive or be in physical control of an automobile on any of the public roads and highways of the state while under the influence of an intoxicant.[2] Thus, the plain language of the statute provides that a person can be found guilty one of two ways: (1) by driving or (2) by being in physical control of an automobile while intoxicated.

On appeal, the Appellant does not challenge the sufficiency of the evidence with regard to whether he was intoxicated or on a public road but, rather, limits his challenge to the issue of whether the State proved that he was driving or in physical control of the vehicle. He relies upon *State v. Lawrence*, 849 S.W.2d 761 (Tenn. 1993), and *State v. Butler*, 108 S.W.3d 845 (Tenn. 2003), in support of this proposition.

Our supreme court, in analyzing whether the Appellant was *in physical control* of the vehicle, was persuaded by the reasoning of *State v. Smelter*, 674 P.2d 690 (Wash. Ct. App. 1984), holding that "we adopt the reasonably capable of being rendered operable standard in cases where a defendant contests the element of physical control based upon the alleged inoperability of the vehicle." *Butler*, 108 S.W.3d at 852. In *City of Mount Vernon v. Quezada-Avila*, 893 P.2d 659, 660-62 (Wash. Ct. App. 1995), the Washington Court of Appeals revisited "the troublesome issue of whether, and under what circumstances, a person may be guilty of physical control of an inoperable vehicle." The *Quezada-Avila* Court stated,

---

[2]The trial court properly merged the two jury verdicts into one conviction for DUI.

The curious extension of physical control sanctioned by *Smelter* is only necessary where the prosecutor decides to charge a defendant with physical control instead of driving while intoxicated (DWI), [Washington Revised Code Annotated section 46.61.502]. We can perceive no set of facts which would support a conviction for physical control of an inoperable vehicle under *Smelter* which would not also support a charge of DWI. How it became customary practice to charge only physical control in such cases is unclear.

*Id*. at 661. In accordance with *Quezada-Avila*, we conclude that, if an individual is guilty of driving a motor vehicle under the influence of an intoxicant, the same facts would support a conviction for being in physical control of a motor vehicle while under the influence. We would note, however, that the reverse is not true. Obviously, a person may be found to be in physical control of a vehicle without being found guilty of driving. Physical control simply provides an alternative means of conviction for DUI when no proof of driving exists. In the present case, both forms of DUI were charged to the jury. Because we conclude that the evidence was sufficient to sustain the Appellant's conviction for driving under the influence, the same facts are, likewise, relevant to the determination that the Appellant was in physical control of the vehicle.

The Appellant alleges that the State failed to present any evidence, direct or circumstantial, that he actually drove the truck. He asserts that all of the evidence presented demonstrates that his truck was inoperable.

In *Lawrence*, 849 S.W.2d at 765, our supreme court adopted a totality of the circumstances test for determining whether a person was driving or in physical control of a motor vehicle. *Butler*, 108 S.W.3d at 850. First, we note that this case is distinguishable from *Butler*, where the motorcycle in question was located in a Walmart parking lot, not the middle of an intersection as is the case here. *See id.* at 847. The evidence is undisputed that the vehicle was located at the intersection of Cedar Bluff and Cedar River Roads, both public roads. The location of this vehicle is of paramount significance and gives rise to an inference that it had been driven immediately prior to the arrival of officers on the scene. The proper focus is not narrowly drawn on the "mechanical condition of the car when it comes to rest, but upon the status of its occupant and the nature of the authority he or she exerted over the vehicle in arriving at the place from which, by virtue of its inoperability, it can no longer move." *Butler*, 108 S.W.3d at 852 (citing *Smelter*, 674 P.2d at 693).[3] Accordingly, under the facts of the present case, the operability of the vehicle is only tangentially relevant to the determination of whether the Appellant was driving a motor vehicle. *See State v. Larriva*, 870 P.2d 1160, 1161 (Ariz. Ct. App 1993).

---

[3]The *Quezada-Avila* Court , 893 P.2d at 660, in analyzing this statement, commented that:

this passage is admittedly confusing. Nevertheless, the [*Smelter*] court *held* that the conviction was properly based on the fact that the defendant drove the vehicle until it ran out of gas. *Smelter*, 674 P.2d at 693. The holding was compelled by the court's efforts to avoid a definition of physical control which would "allow an intoxicated driver whose vehicle was rendered inoperable in a collision to escape prosecution." *Id*.

The officers had the vehicle immediately towed because it was creating a traffic hazard. The Appellant was clearly exercising some authority over the truck as he had opened the hood and remained at the scene. No one else was around the truck, and no one appeared within the fifty minutes that the officers were present. It does appear from the record that the Appellant had the present physical ability to direct the use or non-use of the vehicle. Although the Appellant told the officer that "some bitch," who he did not know, was the owner of the truck, he never asserted that this person was the driver. Moreover, the keys were in the ignition. The Appellant also relies upon the fact that no proof of ownership was entered into evidence. Proof of ownership of the vehicle, while perhaps relevant, is not an element of the crime. Accordingly, we find this argument without merit.[4]

In the absence of any credible proof that this driving might have been done by someone else, it was reasonable for the jury to infer that it was done by the Appellant. *Lawrence*, 849 S.W.2d at 766 (citing *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). Obviously, the truck was driven to the intersection in a functional condition, and the Appellant appeared to be the only person in close proximity. After review of the record, we conclude that the evidence was legally sufficient to support a conviction for DUI under either theory that the Appellant was driving or in physical control of the vehicle. Accordingly, this issue is without merit.

## 2. Driving on a Revoked License

The Appellant also challenges the sufficiency of the convicting evidence with regard to his conviction for driving on a revoked license. Tennessee Code Annotated section 55-50-504(a)(1) (2003). The Appellant does not contest that the evidence was insufficient to show that his driver license was in fact revoked at the time of his arrest. Rather, the Appellant's challenge relies upon his argument that he was not shown to be driving the vehicle. Having already found that the evidence was sufficient to support a finding that the Appellant drove his vehicle upon a public road, we find his argument to be without merit.

### CONCLUSION

Having found that the evidence was sufficient to support the Appellant's convictions for DUI and driving on a revoked license, we affirm the judgments of the Bedford County Circuit Court.

_____
DAVID G. HAYES, JUDGE

---

[4]At trial, as the officer was informing the jury as to the registration or ownership of the truck, the Appellant objected upon grounds of hearsay, which was sustained.